Dugan v. Harman.

JOHN H. DUGAN v. W. P. HARMAN *et ux.*
No. 15,936.

SYLLABUS BY THE COURT.

JUDGMENTS—*Dormancy*—*Validity of Execution.* An execution. which recites that "whereas, on the 13th day of April, 1898, in an action pending before George I. Robinson, a justice of the peace of Elkhorn township, Lincoln county, in the state of Kansas, John H. Dugan recovered two judgments against W. P. Harman and Lucy A. Harman for the sum of $368.07,. and the further sum of $6.23 as costs of suit, with interest at. the rate of 10 per cent. per annum from the 9th day of April,. 1898, and afterward the said John H. Dugan duly filed his. abstract of said judgment in the district court of Lincoln county, Kansas," is not void. And such execution, issued less; than five years after the 13th day of April, 1898, is sufficient. to prevent two judgments rendered on that date by the same court in favor of the same plaintiff and against the same defendants, for separate sums aggregating $368.07, and $6.23 costs, from becoming dormant for a period of five years from the date of such execution.

Error from Lincoln district court; ROLLIN R. REES,. judge. Opinion filed June 5, 1909. Reversed.

STATEMENT.

ON the 13th day of April, 1898, John H. Dugan, as plaintiff in two separate actions before a justice of the peace in Lincoln county, obtained two separate judgments against W. P. Harman and wife, one for $291.55 and $2.26 costs, the other for $76.52 and $2.47 costs. Each judgment bore interest at 10 per cent. per annum.

On August 4, 1900, an abstract of each judgment was filed in the office of the clerk of the district court of Lincoln county and separately entered in the journal of justice's judgments and upon the judgment record. On the 20th day of June, 1902, the clerk of the district court issued an execution, which was not entitled in either case, and of which the following is a copy:

"EXECUTION.

"State of Kansas, Lincoln County, ss.

"The state of Kansas, to the sheriff of Lincoln county, greeting: Whereas, on the 13th day of April, 1898, in an action pending before George I. Robinson, a justice of the peace of Elkhorn township, Lincoln county, in the state of Kansas, John H. Dugan recovered two judgments against W. P. Harman and Lucy A. Harman for the sum of $368.07, and the further sum of $6.23 as costs of suit, with interest at the rate of 10 per cent. per annum from the 9th day of April, 1898, and afterward the said John H. Dugan duly filed his abstract of said judgment in the district court of Lincoln county, Kansas; and, whereas, there remains unpaid on said judgment the sum of $368.07, with interest: Now, therefore, you are hereby commanded that of the goods and chattels of said debtors you cause the moneys above specified to be made, and for want of goods and chattels you cause the same to be made of the lands and tenements of said debtors, and make return of this execution, with your certificate thereon, showing the manner you have executed the same, within sixty days from the date hereof.

"In witness whereof I have hereunto set my hand and affixed the seal of said court, at my office in Lincoln, Kan., in said county, this 20th day of June, A. D. 1902.

[SEAL]    S. D. KISTLER, *Clerk*."

On the back of this paper was indorsed the aggregate amount of the two judgments and the costs, and the sheriff returned thereon "no property found." On the judgment docket, after the entry of each of the separate judgments, the clerk of the district court made the following entry: "Execution issued June 20, 1902. August 20, execution returned unsatisfied."

On May 27, 1907, the clerk of the district court issued another execution, in the same form and with the same recitals as the foregoing. As to what the sheriff did with that execution we are only advised by the following entry made by the clerk of the district court on the judgment docket after each separate judgment. "Execution issued May 27, 1907. Execution returned unsatisfied." The record does not disclose in which of the

two cases, if either, the returns of the executions were made or filed.

On August 12, 1907, separate executions were issued on each of the judgments, directed to the sheriff of Trego county, and the sheriff levied the same upon real estate in that county, which he sold and made return of his action to the district court of Lincoln county.

Thereafter the defendants filed four motions to quash the several executions. The court denied the motions as to the first two executions issued, on the ground that no levies had been made thereunder and the defendants had nothing of which to complain. The court allowed the motions to quash the two executions issued to the sheriff of Trego county, under which the levies on real estate were made. The ground assigned for allowing the last two motions was that the judgments upon which the executions were issued were dormant, the executions issued June 20, 1902, and May 27, 1907, being held void.

*S. C. Miller,* and *E. A. McFarland,* for the plaintiff in error.

*Ira E. Lloyd,* and *John J. McCurdy,* for the defendants in error.

The opinion of the court was delivered by

SMITH, J.: The only question presented in this case is whether the first two executions issued were void. If these executions were void, the judgments, upon which the two following executions were issued, were dormant, and the executions neither received life from the judgments nor imparted life thereto. (*Denny v. Ross,* 70 Kan. 720.) If, however, the first two executions were only voidable, they were sufficient to prevent the judgments from becoming dormant.

While the issuing of one execution upon two separate judgments is irregular, it is the opinion of the court, but not of the writer, that if the execution is sufficient

Dugan v. Harman.

to identify the two judgments, or if it contains suffi-
cient recitals to indicate where the records of the judg-
ments can be found and such records fully identify each
judgment, the execution is not void.  The first two exe-
cutions recite that Dugan recovered two judgments
against W. P. Harman and Lucy A. Harman, on a cer-
tain day, and before a certain justice of the peace, for
the sum of $368.07, and the further sum of $6.23 as
costs of the suit, with interest at the rate of 10 per
cent. from April 9, 1898; that afterward Dugan duly
filed an abstract of the judgment in the district court,
and that there remained unpaid thereon the sum of
$368.07, with interest.  These recitals are sufficient to
direct any one seeking information about the judgments
to the records of the clerk of the district court, as well
as to the records of the justice of the peace, which, of
course, would give him knowledge of all facts pertain-
ing thereto.

The district court held that the first two executions
did not sufficiently identify the two judgments upon
which jointly the executions were successively issued,
and in this the court erred.  The order of the court
quashing the two executions issued to the sheriff of
Trego county is therefore reversed, and the case is re-
manded with instructions to deny such motion and to
make an order confirming the sale, if the sale is other-
wise found to be regular.

MASON, J. (concurring specially) : I concur in the re-
sult stated, but think it pertinent that further refer-
ence be made to the authorities.  Two objections are
made to the execution which the trial court held void.
One is that it did not distinctly refer to the judgments
on which it was based; the other is that it was a single
execution issued upon two separate judgments.  So far
as relates to the failure of the execution to recite the
judgments with accuracy, the weight of authority sup-
ports the view, which is in harmony with modern ten-

20—80 KAN.

dencies, that the defect amounts only to an irregularity, and does not render the execution void. In volume 1 of the third edition of Freeman on Executions, section 43, this language is used, which was originally employed by the author in a note to *John Graham v. Thomas Price et al.*, 3 A. K. Marsh. (Ky.) *522, in 13 Am. Dec. 201, and the substance of which has been quoted with approval in *Anderson v. Gray*, 134 Ill. 550, and in *DeLoach v. Robbins*, 102 Ala. 288:

"There is a just distinction between executions issued without authority, and executions issued under an authority which is erroneously pursued. . . . The former class is void; the latter may, with equal propriety, be termed either irregular or erroneous. When an execution can properly issue, a mistake made by the officer in performing the duty of issuing it is necessarily a mere error or irregularity. . . . If, from the whole writ, taken in connection with other facts, the court feels assured that the execution offered in evidence was intended, issued and enforced as an execution upon the judgment shown to the court, then we apprehend that the writ ought to be received and respected."

The question presented by the other objection is in effect whether the act of a clerk in combining what should be two separate executions—using one piece of paper where he ought to use two—renders the resulting instrument an absolute nullity. By the test proposed in the foregoing quotation it would seem not. Authority to issue two executions exists; that they are issued in combination instead of separately is due to a mistake of the clerk, and therefore, by the criterion suggested, should rank as an irregularity only. In *Bigham v. Dover* (Ark. 1908), 110 S. W. 217, it was held, following two cases cited in volume 17 of the Cyclopedia of Law and Procedure, at page 932, that a single execution based upon two judgments in favor of *different* plaintiffs against the same defendant was void. The trial court decided otherwise, and two of the five members of the supreme court dissented. The

result was affected by earlier Arkansas cases holding that an execution defective in substance is not susceptible of amendment. The three cases referred to appear to be the only ones holding that an execution is void because based on separate judgments in favor of different persons. Those cited in volume 17 of the Cyclopedia of Law and Procedure, at page 1013, in support of the proposition that joint executions can not issue on separate or several judgments decided merely that such executions were vulnerable to a direct attack.

SMITH, J. (dissenting) : I am unable to concur in the decision of the court. I think that the execution not only fails to identify two judgments for separate amounts in separate actions, but, on the other hand, misstates the facts. It recites that the two judgments were rendered "in an action" for the sum of $368.07, etc.; also, that Dugan "duly filed his abstract of said judgment." Of course, if the other facts recited justify the construction, I concede that an "s" should be added to this word "judgment," and that wherever necessary to harmonize the recitals a noun in the singular should be regarded as plural; but a recital that two judgments were obtained in one action (for "an" is equivalent to "one"), which would be a regular proceeding, to enforce which one execution might regularly issue, contains no suggestion that two separate judgments in independent actions were rendered or that the execution was issued to enforce two such judgments.

It is said in volume 17 of the Cyclopedia of Law and Procedure, at page 932: "Each judgment must carry its own execution, and a single execution can not be issued on two separate judgments." (Citing *Doe, on the Demise of Wilkins, v. Rue and Others*, 4 Blackf. [Ind.] 263; *Merchie v. Gaines*, 5 B. Mon. [Ky.] 126.) These authorities are the only ones cited in the brief that are directly in point; and not a single authority is cited and I have been unable after diligent search to

find an authority for the proposition that one execution is valid to sustain two separate and independent judgments. On the other hand, all the digests, textbooks and decisions that I have been able to reach, without expressly saying so, imply that an execution is based upon one, and only one, separate judgment, unless two or more judgments are rendered in one action in favor of one party and against the other. Sections 441 to 522, inclusive, of the civil code carry in every provision the same idea. An execution is a process as a summons is a process; each may be issued in an action, and can only be issued in an action either actually pending or for the purpose of bringing a party to an action into court. And it seems to me that it is no more contemplated that one execution should be issued to enforce two separate and independent judgments than that one summons should be issued in two separate and independent actions and that the parties summoned should be required to obey the mandate therein or to take the consequences.

If one execution can be issued to enforce two judgments of the same date it can be issued to enforce any number of judgments of the same or different dates, all bearing the same or different rates of interest, provided only that the judgments affect the same parties. The whole policy of our code is that the files and proceedings in each separate action shall be kept separate, the proceedings separately recorded, and all the proceedings under one title; and it is expressly provided in section 117 of the code that such title shall not be changed in any stage of the cause. This very proceeding in the court below is or should be a part of the proceedings in one of the two, and not of both, actions which originated in the justice's court in Lincoln county and in which one of the two several judgments was rendered. Each of those actions seems to have the same title, and because thereof this proceeding under the same title in the lower court does not indicate

which of the two independent actions it was a part of.

Again, the sheriff is required by the statute to make return of an execution. The necessary implication is that the return is to be made in the action in which the execution was issued. In which of the two actions was this return made? It does not appear to have been made in either.

It is said in the opinion of the court that the recitals in the execution are sufficient to direct any one seeking information to records which would give him all the pertinent facts. I think, on the other hand, that the recitals are misleading rather than directory. It is recited that two judgments were rendered for $368.07, and $6.23 costs. Whether this is the aggregate amount or the amount of each judgment does not appear. Further it is recited that "Dugan duly filed his abstract of said judgment" and "there remains unpaid on said judgment the sum of $368.07, with interest." This would seem to indicate that the sum stated is the amount of one judgment, and that the costs, at least, had been paid.

I think the execution itself should inform 'the defendant and the officer to whom it is directed that it is issued on a particular judgment, and the amount of it, although evidence *aliunde* may cure a defect of this kind. Suppose the execution in question had been issued to the sheriff of another county in the state to which the defendants had removed, far from Lincoln county, that one of the judgments upon which it is claimed to have been based was void for any cause, and that the defendants desired to pay the valid judgment: neither the defendants nor the sheriff would have any basis for an adjustment, and the sheriff could not accept payment and make return that one judgment was paid. Then suppose the sheriff had levied upon and sold lands of the defendants in that county, and, on a contested motion to confirm the sale, the court should have found one judgment void: what should have been

the order of the court? There are numerous authorities holding that the fact that an execution on which a sale is made is excessive in amount is not ground for setting aside the sale if any sum remains due, but instead the court apportions the purchase-price. The sale then should be confirmed. If this is correct the defendants would be deprived of their land and compelled to take the price brought therefor at sheriff's sale, for the reason that the sheriff was unable to take the legal amount due. Is it any answer to say that the sheriff should have gone to the records of the district court of Lincoln county or to the office of the justice of the peace in that county to learn the facts? I do not think it is. I think every execution should speak for itself, and that the precedent set in the majority opinion is a dangerous one and tends to unnecessary confusion; also, that it is a departure from all precedent, and that one execution should not be issued on two or more independent judgments rendered in two or more independent actions.

The plaintiff in this action, if he had followed the plain provisions of the statute to keep his judgments from becoming dormant, would have been entitled to recover his money. The way to prevent his judgments from becoming dormant was very plain, simple, and well recognized. He chose to adopt another way, recognized neither by the statute nor by precedent. As well might he have filed the abstract of his two judgments as one.

Mr. Justice Mason cites volume 1 of the third edition of Freeman on Executions, section 43, and several decisions to support the majority decision. With all due deference, I think the citation, if relevant at all, is adverse to his contention. The writer says:

"There is a just distinction between executions issued without authority, and executions issued under an authority which is erroneously pursued. . . . The former class is void; the latter may, with equal propriety, be termed either irregular or erroneous."

Dugan v. Harman.

No authority has been found in the statute or elsewhere for the issuance of one execution upon two independent judgments rendered in separate and independent actions. The test applied in the text and cases cited in support of it as to the validity of an execution is that it may be identified as issued upon a valid judgment—not two valid judgments. It may be freely conceded that two valid executions might be issued upon one piece of paper for the enforcement of two independent judgments, but they should be as independent as are the judgments.

It is intimated that the cases holding executions like the one in question void were decided upon direct attacks. In *Doe, on the Demise of Wilkins, v. Rue and Others,* 4 Blackf. (Ind.) 263, an execution issued upon two judgments was declared void after a sale of land which had been had thereon to satisfy it and another valid execution. The sale, however, was upheld for the reason assigned—that one execution was valid, and that the sale was not attacked for ten years after it was made. In *Bigham v. Dover* (Ark. 1908), 110 S. W. 217, one execution was issued on separate judgments. A levy thereof was made on a saddle, and the saddle was sold thereunder. The lower court sustained the sale, but its decision was reversed on the ground that "a joint execution upon two separate judgments is not voidable merely, but void."

It is said that there are only three decisions found adverse to the validity of executions like the one in question. Not one decision or authority has been found of which it can fairly be said that it sustains the validity of such executions. Possibly one reason that there are only three adverse decisions is that among the thousands of decisions published in this country there is no record in any case except these three that any one ever contended that such an execution was valid.

The execution in question is an anomaly—a twin

born into separate families at the same time, without brother or sister. I think that it derived no life from either of the judgments and that it was incapable of imparting life to either of them, that the judgments were dormant at the time the executions were issued upon which the land was sold, and that the judgment of the trial court should be affirmed.